**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 09-35581

FALLON LUMINOUS PRODUCTS
CORPORATION
    a/k/a FALLON CUSTOMER SERVICE
    a/k/a GLASS BENDING CORPORATION
    a/k/a ADVERNEON, a/k/a E-GLAS,
    a/k/a ELECTRIGLAS, a/k/a ARTNEON,
    a/k/a DECONEON, a/k/a LOGONEON
    a/k/a SPELLNEON, a/k/a EMBEDDED
    a/k/a BRINGING NEON TO LIFE

                Debtor

**MEMORANDUM ON
CONTESTED INVOLUNTARY PETITION**

**APPEARANCES:**    STITES & HARBISON PLLC
                         Robert C. Goodrich, Jr., Esq.
                         401 Commerce Street
                         Suite 800
                         Nashville, Tennessee 37219
                 KATTEN MUCHIN ROSENMAN LLP
                         Peter A. Siddiqui, Esq.
                         525 West Monroe Street
                         Chicago, Illinois 60661
                         Attorneys for Petitioning Creditors, iLight Technologies, Inc., Fastenal
                         Company, American Excelsior Co., France/Scott Fetzer Company, and
                         Fallon Properties South Carolina, LLC

                 BRADLEY ARANT BOULT CUMMINGS LLP
                         William L. Norton, III, Esq.
                         1600 Division Street
                         Suite 700
                         Post Office Box 340025
                         Nashville, Tennessee 37203
                         Attorneys for Fallon Luminous Products Corporation

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This matter is before the court on the Involuntary Petition filed on October 8, 2009, by iLight Technologies, Inc., Fastenal Company, American Excelsior Co., and France/Scott Fetzer Company, and joined by Fallon Properties South Carolina, LLC, pursuant to an Order of Joinder entered on December 2, 2009 (collectively, Petitioning Creditors), seeking an order for relief under Chapter 7 against Fallon Luminous Products Corporation (Debtor).  The Debtor filed its Response to Involuntary Petition and Motion to Dismiss on October 19, 2009, requesting dismissal of the Involuntary Petition and seeking costs and damages under 11 U.S.C. § 303(i) (2006).

The trial on the contested Involuntary Petition was held on January 8, 2010.  The record before the court consists of Stipulations set forth in paragraph C of the Scheduling Order entered on November 6, 2009, the Joint Stipulations filed by the parties on December 9, 2009, twenty-eight exhibits, including depositions, stipulated into evidence, and the in court testimony of one witness, John Perrachon, President and CEO of the Debtor.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(O) (2006).

I

The Debtor is a South Carolina corporation which designs, manufactures, and sells interior lighting and signing products to companies including Miller, Coors, Anheuser-Busch, and Sam's Club. It currently operates out of a facility in Antigo, Wisconsin, with approximately 70 employees, where it produces neon and custom lighting orders, having closed a facility in Spartanburg, South Carolina, in June 2009.

On March 24, 2006, iLight Technologies, Inc. (iLight) filed a lawsuit, Civil Action No. 2:06-cv-25, against the Debtor in the United States District Court for the Middle District of Tennessee, for patent infringement. Following an eight-day trial concluding on April 30, 2009, the jury found the Debtor to have willfully infringed iLight's patents. On July 2, 2009, an Amended Permanent Injunction Order was issued against the Debtor, and on October 1, 2009, the court entered a Final Judgment, awarding iLight damages in the amount of $5,062,963.54 (iLight Judgment). The Debtor timely appealed the iLight Judgment to the United States Court of Appeals for the Federal Circuit without posting a bond. On June 26, 2009, its request for a stay was denied by the District Court for the Middle District of Tennessee, and again by the Federal Circuit Court of Appeals on July 1, 2009.[1]

On October 8, 2009, the day preceding a scheduled foreclosure sale of substantially all of the Debtor's assets, the Petitioning Creditors filed the Involuntary Petition against the Debtor seeking an order for relief under Chapter 7, alleging, pursuant to 11 U.S.C. § 303(h)(1) (2006), that the Debtor was generally not paying its debts as such debts become due, unless such debts are the subject of a bona fide dispute. The Debtor filed its Response to Involuntary Petition and Motion to Dismiss on October 19, 2009, denying that a sufficient number of creditors had joined in the Involuntary Petition, denying that the Petitioning Creditors held noncontingent, undisputed claims in an aggregate amount of at least $13,475.00 more than the value of any lien on property securing the claims, denying that the claims were not contingent and/or subject to a bona fide dispute, and

---

[1] The court recognizes that the dates that the requests for the stay were denied by the district and appellate courts pre-date the iLight Judgment and appear to relate to the permanent injunctive relief. Nonetheless, the Petitioning Creditors and Debtor have stipulated that the Debtor timely appealed the iLight Judgment and that it did not post a bond but sought a stay, which was denied by the district court and Court of Appeals. JT. STIPS. at ¶ 5, 6.

denying that it was generally not paying its debts as they became due. The Debtor also requested attorney's fees and expenses pursuant to 11 U.S.C. § 303(i)(1) (2006).

## II

Involuntary petitions are governed by 11 U.S.C. § 303, which provides, in material part:

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount[.]

11 U.S.C. § 303(h)(1).[2] The burden of proof that a debtor is generally not paying its debts falls upon the petitioning creditors, *In re Brooklyn Res. Recovery, Inc.*, 216 B.R. 470, 482 (Bankr. E.D.N.Y. 1997), and "'requires a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts.'" *Liberty Tool & Mfg., Inc. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1072 (9th Cir. 2002) (quoting *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1504 n. 41 (11th Cir. 1997)). "The bankruptcy court considers the proportion of the debt being paid – both in terms of the proportion of creditors being paid and the proportion of debt, in dollar value, being paid[,]" *Concrete Pumping Serv., Inc. v. King Constr. Co., Inc.*, 943 F.2d 627, 630 (6th Cir. 1991) (citations omitted), and

---

[2] Pursuant to the Joint Stipulations filed on December 9, 2009, the parties stipulated that a sufficient number of creditors had joined in the Involuntary Petition and that the Petitioning Creditors held noncontingent, undisputed claims greater than $13,475.00. The parties also stipulated that the claims of Fastenal Company, American Excelsior Co., France/Scott Fetzer Company, and Fallon Properties South Carolina, LLC, were not subject to a bona fide dispute. Prior to the presentation of the parties' proof, the court issued a ruling from the bench holding that the iLight Judgment, Trial Exhibit 12, is not subject to a bona fide dispute.

4

"should include creditors who are not currently pressing the alleged debtor for payment, if their debts have become due." *In re Smith*, 415 B.R. 222, 231 (Bankr. N.D. Tex. 2009). Nevertheless, "[w]here a debtor fails to pay even one debt that makes up a substantial portion of its overall liability, a court may find that [it] is generally not paying [its] debts." *In re Amanat*, 321 B.R. 30, 39-40 (Bankr. S.D.N.Y. 2005).

In making the fact-specific determination based upon the totality of the circumstances at the time the petition is filed, "[c]ourts that have undertaken this analysis have identified the following four factors as guideposts in their inquiry: (1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the nonpayments; and (4) the debtor's overall conduct of its financial affairs." *Crown Heights Jewish Cmty. Council, Inc. v. Fischer (In re Fischer)*, 202 B.R. 341, 350 (E.D.N.Y. 1996); *see also Perez v. Feinberg (In re Feinberg)*, 238 B.R. 781, 783 (B.A.P. 8th Cir. 1999). Whether the debtor has terminated its business operations entirely and whether its past due debts are substantially large in comparison to its assets are relevant factors, *In re A&J Quality Diamonds, Inc.*, 377 B.R. 460, 463-64 (Bankr. S.D.N.Y. 2007), as are the following:

– the debtor's ability to satisfy only small periodic payments, not long-term obligations;

– the debtor's making regular payments only on small, recurring obligations, not on larger debts;

– the rapid decline in the value of the debtor's assets resulting from assets sales rather than profit generating activity;

– the amount of the debtor's debts compared to the debtor's yearly income;

– the debtor's voluntary shutdown of operations;

– the insider's deferred payment on account of loans payable to them;

– serious allegations concerning the conduct of the debtor's business;

– the apparent bad faith evidenced by corporate officers taking loans despite the company's financial distress;

– payments made by insiders both before and after filing;

– payments made by third parties or a waiver of claims by a third party;

– the debtor's statement of a subjective desire to pay the debts;

– the debtor's liquidation of its assets;

– the fact that payments have been made by some partners individually even though the debts were those of the partnership; [and]

– the fact that the due and unpaid debts are made up entirely of claims of the petitioning creditors while other non-petitioning creditors are all paid.

*In re Hentges*, 350 B.R. 586, 603-04 (Bankr. N.D. Okla. 2006) (quoting *Soc'y of Lloyd's v. Harmsen (In re Harmsen)*, 320 B.R. 188, 202 n.43 (B.A.P. 10th Cir. 2005)).

In support of the Involuntary Petition and their contention that the Debtor is generally not paying its debts as they become due, the Petitioning Creditors point first to the iLight Judgment having a balance, as of October 8, 2009, of at least $5,062,963.54, second to the Debtor's secured debts, and third to the Debtor's trade payables.

Clearly, the iLight Judgment makes up the majority of the Debtor's unsecured debt. The Petitioning Creditors contend that, as evidence that the Debtor is not paying its debts as they become due with respect to the iLight Judgment, it was due on the day it was entered, October 1, 2009, and although the Debtor has appealed the iLight Judgment, it was twice denied requests for a stay pending appeal, by two separate courts.

With regard to the secured debt, consisting of $23,394,000.00 in principal plus approximately $6,000,000.00 in accrued interest as of October 8, 2009, the Debtor does not dispute that the iLight litigation was the basis for the declaration of default by the secured lenders, FSD Repurchase Solutions, LLC (FSD) and Transamerica Life Insurance Company (Transamerica). This default is evidenced by a Notice of Event of Default and Reservation of Rights sent to the Debtor on May 12, 2009, and a May 14, 2009 letter from FSD directing the Debtor to turn over possession of substantially all of its assets to FSD as agent for the lenders by May 15, 2009, pursuant to the Amended and Restated Loan and Security Agreement executed by the Debtor and co-Borrowers dated November 30, 2006, as amended by an Amendment Agreement dated May 13, 2009 (Security Agreement).[3] JT. STIPS. at ¶16; TRIAL EX. 3; TRIAL EX. 4. Pursuant to the Security Agreement, the Debtor and co-Borrowers issued five promissory notes in favor of FSD and Transamerica in the aggregate principal amount of $23,394,000.00, as discussed above, and accrued interest on those notes approximated $6,000,000.00 by October 8, 2009.[4] There is also no dispute that the Debtor agreed to surrender possession of substantially all of its assets, which serve as collateral under the Security Agreement, to FSD and Transamerica and that a sale of those assets, scheduled for October 9, 2009, was stayed by the filing of the Involuntary Petition. JT. STIPS. at ¶¶ 17-18.[5]

---

[3] In addition to the Debtor, the Borrowers under the Security Agreement are Fallon Visual Products Corp., Visual Products Corp., Signage, Inc., Transworld Signs, Inc., Transworld Signs Co./Enseignes Transworld CIF, and VPC International, LLC. TRIAL EX. 1.

[4] The Security Agreement was entered into evidence as Trial Exhibit 1, and the promissory notes, entered into evidence as Collective Exhibit 2, are specifically described as follows: (1) Revolving A Note in the original principal amount of $2,437,000.00; (2) Term A Note I in the original principal amount of $2,548,340.00; (3) Term A Note II in the original principal amount of $2,873,660.00; (4) Revolving Note B in the original principal amount of $4,500,000.00; and (5) Term B Note in the original principal amount of $11,035,000.00. JT. STIPS. at ¶ 12; TRIAL EX. 1; COLL. TRIAL EX. 2.

[5] FSD is owned entirely by Lincolnshire Equity Fund H, L.P., which indirectly holds a majority of the equity
(continued...)

The Debtor has appealed the iLight Judgment, and the court agrees that it is incongruous to believe that any judgment debtor would pay a judgment it has appealed prior to a disposition of the appeal. Nevertheless, although the iLight Judgment had not yet become final under Rule 62(a) of the Federal Rules of Civil Procedure on October 9, 2009, the date the Involuntary Petition was filed, it was, as argued by the Petitioning Creditors, a liability which was due and payable by the Debtor upon the date it was entered that has not yet been paid, and it must be taken into account in determining whether the Debtor is generally not paying its debts. The proposed sale of assets scheduled for October 9, 2009, must also be considered, in that Mr. Perrachon testified that had it occurred, the Debtor's assets would have been fully liquidated and sold to FSD or another bidder. Had the October 9, 2009 sale taken place, Fallon Luminous Products Corporation would, on October 10, 2009, have existed in name only. This result was clearly understood and agreed upon by FSD and the Debtor as is clear from the deposition testimony of David O'Toole, the Debtor's Chief Financial Officer.

> Q. If that [October 9, 2009] sale had happened, FLPC [6] as a corporate entity would be out of business; correct?
>
> **A. Yes.**
>
> Q. It would have nothing? It would have no assets?
>
> **A. It would have nothing.**
>
> Q. It would have liabilities?

---

[5](...continued)
ownership in Fallon Visual Products Corp., which is the parent corporation of the Debtor. JT. STIPS. at ¶¶ 8-10. In addition to being President and CEO of the Debtor, Mr. Perrachon testified that he is also CEO of Fallon Visual Products Corp. and other of the company's subsidiaries.

[6] Fallon Luminous Products Corporation.

**A. Yes.**

Q. And the new company would own the assets, and, now, it would – this – the business enterprise would have been owned by someone else?

**A. Correct.**

Q. Okay.

**A. By the lender.**

Q. By the lender's subsidiary?

**A. Yes.**

Q. Correct?

**A. Yes**

Q. And was this move made in response to the fact that iLight Technologies had a judgment that was not stayed.

**A. Yes.**

Q. This was a way to move the assets out of the entity that iLight – to move them away from iLight?

**A. Yes.**

Q. Okay. The FLPC was cooperated with FSD in this process as far as you know?

**A. Yes.**

Q. This is a joint effect by the lender and the borrower to effect the transfer of the assets?

**A. Yes.**

TRIAL EX. 9, at 45 - 47.

The Petitioning Creditors also contend that the Debtor was generally not paying its debts to its secured lenders as they became due because it was not making interest payments as required

under the Security Agreement. At trial, Mr. Perrachon testified that the maturity date for the Security Agreement was December 31, 2011, and that no principal payments were due until that date. *See* TRIAL EX. 1 at p. 11; p. 20, ¶ 3.2. Additionally, he testified that the failure to make interest payments does not constitute a payment default under the Security Agreement, and that the Debtor has not made any interest payments, even though the Security Agreement requires quarterly accrued interest payments. *See* TRIAL EX. 1 at p, 10; p. 19, ¶ 3.1(b); p. 46, ¶ 9.1. While both of these statements are substantiated by the Security Agreement, the fact remains that the Debtor is not making, nor has it ever made, the quarterly interest payments required by the Security Agreement, and it matters not whether such failure constitutes a default under the terms of the Security Agreement.

Finally, with respect to its 107 trade creditors, the Debtor had total outstanding payables of $933,440.77 on October 8, 2009. JT. STIPS. at ¶ 15; TRIAL EX. 7. Of these accounts payable, $287,042.99 was current, $55,539.73 was "on hold" and disputed, $354,196.99 was past due 0-30 days, $136,650.13 was between 31-60 days overdue, $23,732.38 was 61-90 days overdue, $57,524.39 was past due between 91-120 days, and $18,754.16 was more than 120 days past due. JT. STIPS. at ¶ 15; TRIAL EX. 7. Accordingly, 30.75% of the Debtor's payables were current on the petition date, while 63.30% was past due, with 10.71%, or $100,010.93, more than 60 days overdue.[7] Mr. Perrachon testified that he reviews the payables report once a month and, based upon that review, the Debtor's historical "current"' payments to trade creditors is payment within 60 days of approximately 69% of the trade creditors, which is in line with industry customs. He also testified that none of the trade creditors listed on Trial Exhibit 7 has gone to C.O.D., filed a lawsuit for a past

---

[7] Paragraph 15 of the Joint Stipulations states that the total debt which was more than 60 days past due was $100,101.78, representing 10.72%, but the court's calculations based upon its review of Trial Exhibit 7 yielded a slightly lower figure.

due account, interrupted supplies to the Debtor, or made demands for payment.  With respect to the Petitioning Creditors themselves, Mr. Perrachon testified that the Debtor was approximately 15 days past due on $13,500.00 owed to American Excelsior Co., was approximately 30 days past due on twelve invoices to Fastenal Company, in dispute with France/Scott Fetzer Company over defects in the transformers it supplied, and 30 days past due on its rent of approximately $40,000.00 owing Fallon Properties South Carolina, LLC, which was consistent with its payment history.  The Debtor also relied on the deposition testimony of Ryan Olson, corporate counsel for Fastenal Company, that the Debtor was occasionally late but always made its payments.  TRIAL EX. 25 at p. 32, lines 10 - 22.

   Section 303(h) provides for the entry of an order for relief when a debtor is generally not paying its debts when they become due, unless such debts are subject to a bona fide dispute.  Section 303(h) does not require that its creditors make demand for payment, nor that the payment history be tested by an industry or customary standard.  The question is whether its debts are being paid when due, and in this case, even though none of the Debtor's trade creditors have changed their terms or taken any active steps to collect any past due amounts, as evidenced clearly by Trial Exhibit 7, a substantial portion of the Debtor's debts are generally not being paid when they become due.

   The court finds it material that, according to Mr. Perrachon's testimony, the Debtor has used the loan money procured under the November 30, 2006 notes to pay its operating expenses and its payables to trade creditors, but it has made none of its quarterly accrued interest payments to its secured lenders.  Furthermore, despite his testimony that the Debtor has annual revenues of $16,000,000.00 and that the iLight Judgment significantly harmed the Debtor due to the amount and the injunction, Mr. Perrachon also testified that the Debtor and its parent and related companies have

11

not been doing well financially since 2004, and that he joined the parent company approximately fourteen months ago to help it out of difficulties with its investments, including the Debtor. Based upon this testimony and the facts presented, it is clear that the Debtor has significant financial problems, notwithstanding the iLight Judgment and injunction, which it acknowledges. In a May 15, 2009 letter to its secured lender, FSD, the Debtor, speaking through its then Chief Financial Officer, Leah White, stated, in material part:

> FLPC and the other Borrowers (as defined in the [Security] Agreement) are indebted to the Lenders in the amount of $23,090,764.00 plus accrued interest thereon, charges and costs secured by security interests granted to the Agent, for the benefit of the Lenders, in substantially all of the assets of FLPC (the "Collateral"). *Due to the inability of the undersigned to pay its debts and obligations to the Lenders*, the undersigned herewith grants to the Agent, for the ratable benefit of the Lenders, all rights of possession in and to the Collateral as set forth on Schedule A annexed hereto (the "Specified Collateral") to be disposed of, as the Agent and the Lenders deem advisable and for the Lenders to credit the net proceeds resulting from any sale or other disposition to the account of FLPC with the Lenders.
>
> . . . .
>
> *FLPC further acknowledges that it has defaulted in the payment of its debts and obligations to the Lenders* and hereby waives and renounces all of its rights to notification under Section 9-611 of the Uniform Commercial Code as adopted in the State of New York ("UCC") as to the sale or other disposition by the Agent or any Lender of the Specified Collateral and under Sections 9-620 and 9-623 of the UCC regarding acceptance of collateral as discharge of the obligations of FLPC to the Lenders and waiver of FLPC's right to redeem collateral, respectively.

TRIAL EX. 5 (emphasis added).

Based upon a totality of the circumstances, the court finds that the Debtor has generally not been paying its debts as such debts become due, that such debts are not the subject of a bona fide dispute, and that an order for relief under Chapter 7 will accordingly be entered against the Debtor pursuant to 11 U.S.C. § 303(h)(1).

An order consistent with this Memorandum will be entered.

FILED:  January 20, 2010

                        BY THE COURT

                        */s/  RICHARD STAIR, JR.*

                        RICHARD STAIR, JR.
                        UNITED STATES BANKRUPTCY JUDGE